UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHNNY LEE TAYBRON, JR.,

                Petitioner,             Case No. 1:12-cv-911

v.                                         Honorable Robert J. Jonker

CINDI S. CURTIN,

                Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner pleaded guilty in the Saginaw County Circuit Court to fourteen charges in four separate case files. In Case No. 08-030603-FC, Petitioner admitted to being guilty of carrying a concealed weapon (CCW), MICH. COMP. LAWS § 750.227, carrying a dangerous weapon with unlawful intent, MICH. COMP. LAWS § 750.226, being a felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, assault with intent to do great bodily harm less than murder (GBH), MICH. COMP. LAWS § 750.84, and two counts of felony firearm, MICH. COMP. LAWS § 227b. In Case No. 08-030604-FH, Petitioner pleaded guilty to being a felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possessing a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b. In Case No. 08-030872-FH, Petitioner pleaded guilty to one count each of CCW, MICH. COMP. LAWS § 750.227, being a felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and felony firearm, MICH. COMP. LAWS § 750.227b. In Case No. 08-030914-FH, Plaintiff pleaded guilty to conspiracy to commit uttering and publishing, MICH. COMP. LAWS

§ 750.249, and one count of uttering and publishing, MICH. COMP. LAWS § 750.249.  On October 20, 2008, the court sentenced Petitioner as a fourth-offense felony offender, MICH. COMP. LAWS § 769.12, to concurrent prison terms of 8 to 20 years on the GBH conviction, 3 to 5 years on each of the CCW convictions, 1 year and 2 months to 15 years on each of the felon-in-possession convictions, 3 years and 10 months to 20 years on each of the uttering-and-publishing convictions, and 90 days, or time served, on the domestic-violence conviction.  He also sentenced Petitioner to four two-year prison terms on the four felony-firearm convictions, which were to run concurrently with one another but consecutively to the sentences on the other convictions.

In his *pro se* petition, Petitioner raises the following grounds for relief, as follows:

I.      [PETITIONER'S] CONVICTION FOR FELONY FIREARM AND FELON IN POSSESSION OF A FIREARM VIOLATE DEFENDANT'S DOUBLE JEOPARDY PROTECTIONS AND ARE, ACCORDINGLY, INVALID.

II.     [PETITIONER] ASSERTS THAT HIS PLEAS TO CARRYING A CONCEALED WEAPON IS [SIC] INVALID BECAUSE THE RECORD DOES NOT CONTAIN AN ADEQUATE FACTUAL BASIS FOR THE PLEA.

III.    THE GUILTY PLEA IS INVALID BECAUSE IT IS NOT KNOWING AND VOLUNTARY, IN VIOLATION OF [PETITIONER'S] STATE AND FEDERAL CONSTITUTIONAL RIGHTS, US CONST, AMS V, VI; CONST 1963.

IV.     [PETITIONER] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY THE FEDERAL AND STATE CONSTITUTIONS, US CONST, AM[] VI; CONST 1963, ART 1, § 20, WHERE HIS TRIAL ATTORNEY FAILED TO MAKE APPROPRIATE OBJECTIONS TO THE ISSUES IN THIS CASE.

V.      [REMAINING GROUNDS AS DISTILLED FROM THE MOTION FOR RELIEF FROM JUDGMENT AND ITS SUPPLEMENT.]

        A.      Petitioner's counsel was ineffective for not properly investigating and finding evidence of his innocence, making his plea invalid.

B.      There was insufficient evidence that he possessed the gun that he admitted he had under his pillow and that he admitted he knew was there.

C.      The judge coerced Petitioner's guilty pleas by accurately stating that, due to his habitual offender status, many of his charges were life offenses.

D.      The trial court did not inform him of his minimum or maximum sentence for his charges, instead telling him only that he faced "life or any term of years."

E.      Petitioner never admitted he committed any crimes; all he said was "yes" each time after the court asked him if he committed the acts that were the basis for each of the crimes charged.

G.      The trial court did not spell out the elements of each crime when Petitioner admitted acts that satisfied the elements of each crime at his guilty plea.

H.      The habitual offender status was not timely filed.

I.      Petitioner's habitual offender status was made based on criminal acts, not his status as a habitual criminal.

J.      Petitioner was improperly arrested without a warrant, and police obtained a search warrant based on evidence obtained during the arrest.

K.      Petitioner was not arraigned within 48 hours of his arrest.

L.      Petitioner was not given a copy of his probation violation charge.

M.      Petitioner was not notified of his right to a hearing on his probation charge.

N.      The seizure of Petitioner's discarded gun after a foot chase was illegal.

O.      There is no such crime as conspiring to commit uttering and publishing.

P.      There was no evidence presented that Petitioner forged a check.

Q.   Petitioner's conviction under uttering and publishing was under the wrong statute because there is a more specific statute that applies.

R.   Petitioner's conviction under conspiracy to commit uttering and publishing was under the wrong statute because there is a more specific statute that applies.

S.   Petitioner's conviction of assault with intent to cause great bodily harm was invalid because there is a more specific statute, discharging a gun from a moving vehicle, that applies.

T.   There was insufficient evidence of Petitioner's intent to cause great bodily harm.

(Am. Pet., ECF No. 7, PageID.140-41, 143, 145, 147; Mot. for Relief from J., ECF No. 28; Supp. to Mot. for Relief from J., ECF No. 31.)  On September 5, 2013, Respondent filed an answer to the petition (ECF No. 13), stating that the grounds should be denied because they are noncognizable, procedurally defaulted, and/or without merit.  On September 9, 2013, Respondent filed the state-court record, pursuant to Rule 5, RULES GOVERNING § 2254 CASES.  (ECF Nos. 15-41.)  Upon review and applying the AEDPA standards, the Court finds that all habeas grounds are noncognizable, procedurally defaulted, or meritless. Accordingly, the Court will deny the petition for failure to raise a meritorious federal claim.

**<u>Procedural and Factual Background</u>**

Petitioner was charged in four separate cases for conduct that occurred on October 2, 2007, October 12, 2007, December 25, 2007, and March 19, 2008.  In Case No. 08-030603-FC, Petitioner initially was charged with one count of assault with intent to commit murder, an alternative count of GBH, being a felon in possession of a firearm, CCW, carrying a weapon with unlawful intent, and two counts of felony firearm.  In a supplemental information, he was charged

-4-

with being a fourth-offense felony offender.  (ECF No. 17.)  In Case No. 08-030604-FH, Petitioner initially was charged with assault on or resisting and obstructing a police officer, domestic violence, being a felon in possession of a firearm,  and felony firearm, and a supplemental information was filed charging him with being a fourth-offense felony offender.  (ECF No. 18.)   In Case No. 08-030872-FH, Petitioner was charged with CCW, being a felon in possession of a firearm, and felony firearm.  A supplemental information was filed, charging him with being a third-offense feleony offender.  In Case No. 08-030914-FH, Petitioner initially was charged with one count of conspiring to commit uttering and publishing and eleven counts of uttering and publishing.  A supplemental information charged him with being a third-offense felony offender.

On September 10, 2008, Petitioner pleaded guilty to some or all of the offenses in the four cases.  In Case No. 08-030603-FC, in exchange for dismissal of the charge of assault with intent to murder, Petitioner pleaded guilty to GBH, being a felon in possession of a firearm, CCW, carrying a dangerous weapon with intent, two counts of felony firearm, and being a fourth-offense felony offender.  In Case No. 08-030604-FH, Petitioner pleaded guilty to one count each of domestic violence, being a felon in possession, and felony firearm, and he admitted his fourth-offense felony offender status.  In exchange, the resisting-and-obstructing offense was dropped, and the prosecutor agreed not to submit the file to the United States Attorney for indictment, which he had been advised would be forthcoming if Petitioner did not plead guilty in the instant case.   In Case No. 08-030872-FH, Petitioner pleaded guilty to all charges (CCW, felon in possession, felony firearm, and third-offense felony offender).  Finally, in Case No. 08-030914, Petitioner pleaded guilty to conspiracy to commit uttering and publishing and one count of uttering and publishing, as a third-

offense felony offender.  In exchange, the prosecutor agreed to dismiss the other ten counts of uttering and publishing.

On October 20, 2008, Petitioner was sentenced as a fourth-offense felony offender to the prison terms earlier described.  (Sentencing Tr. (S. Tr. ), 6-8, ECF No. 26.)

On April 17, 2009, Petitioner, through appellate counsel, filed a motion to withdraw the plea and/or for resentencing in each of the four cases.  (*See* Mot. to Withdraw Plea, ECF Nos. 15-18.)  At a hearing held on September 8, 2009, the trial court heard argument on all four cases. In Case No. 08-030603-FC, Petitioner first argued that the conviction for felony firearm in relation to being a felon in possession of a firearm violated the Double Jeopardy Clause.  Second, he argued the plea transcript lacked sufficient evidence to support the conviction for CCW.  Third, Petitioner contended that the plea was not knowingly and voluntarily entered because the court failed to instruct Petitioner that, because of the fourth-offense habitual offender enhancement, Petitioner would be exposed to higher sentencing guidelines.  Fourth, Petitioner argued that the court did not exercise meaningful discretion in setting the maximum term, providing no analysis for why it sentenced Petitioner  at the top end of the chosen sentence.  Fifth, Petitioner asserted that the felony-firearm should not run consecutively to the sentence for carrying a dangerous weapon.  (Hr'g on Mot. to Withdraw Plea, 4-6, ECF No. 27.)

In Case No. 08-030604-FH, counsel argued that Petitioner could not be convicted for felony firearm, where there was no exercise of control over the gun during the domestic violence, as the gun was only found near Petitioner when he was asleep.  (*Id.*, 7.)  Petitioner also repeated the argument made in the first case, that the plea was not voluntary because Petitioner was not informed about the higher guidelines he faced as a fourth-felony offender.

-6-

With respect to Case No. 08-30872-FH, Petitioner renewed his argument that conviction for both felon in possession and felony firearm violated double jeopardy.  He also argued that the guidelines for the CCW offense called for a minimum sentence of 7 to 34 months, but Petitioner was sentenced to a minimum sentence of 36 months without reasons given for the departure.  (*Id.*, 7-8.)  In addition, Petitioner contended that the plea lacked a factual basis for the CCW offense, as nothing suggested that Petitioner concealed the firearm.  Further, Petitioner argued that he was sentenced as a fourth-offense habitual offender, rather than the charged third-offense habitual offender, because as a third-offense felony offender, life was not a possible sentence, as the trial court had represented at the plea hearing.  Petitioner also repeated the argument that the plea was not voluntary and knowing because Petitioner had not been advised of the impact of the fourth-offense felony offender enhancement on the sentencing guidelines.

In the fourth case, No. 08-030914-FH, Petitioner argued that, while the factual basis for the plea was sufficient to support the conviction for conspiracy to commit uttering and publishing, it was insufficient for the offense of uttering and publishing, as it contained no admissions that Petitioner or anyone else actually cashed one of the checks.  In addition, Petitioner reargued his position that his plea was not voluntary, as he was not advised of the effect of his habitual-offender enhancement on his sentencing guidelines.  Further, as with the prior case, Petitioner was improperly sentenced as a fourth-offense, rather than a third-offense, felony offender, as the court considered the offense to be a possible life offense.  (*Id.*, 7-9.)  Finally, Petitioner argued that trial counsel was ineffective in failing to recognize and raise all of the other issues presented in the motion.  (*Id.*, 9-10.)

In orders issued on September 18, 2009, the court denied the motion to withdraw the plea and/or for resentencing in Case Nos. 08-030603-FC and 08-030604-FH.  (9/18/09 Cir. Ct. Ords., ECF Nos. 32, 34.)  In Case No. 08-030872-FH, the court denied the motion to withdraw the plea, but granted resentencing on the CCW offense.  (9/18/09 Cir. Ct. Ords., ECF Nos. 36.)  In Case No. 08-030914-FH, the court denied the motion to withdraw the plea, but granted resentencing. Following a resentencing hearing held on November 9, 2009, the court resentenced Petitioner to a term of 30 months to five years on the CCW in Case No. 030872-FH.  (*See* Cir. Ct. Dkt., 4, ECF No. 15.)  In Case No. 08-030914-FH, the court resentenced Petitioner to concurrent prison terms of 30 months to 20 years on both the conspiracy to commit uttering and publishing and the offense of uttering and publishing.  (Cir. Ct. Dkt., 5, ECF No. 16.)

Petitioner sought leave to appeal his convictions and sentences to the Michigan Court of Appeals.  In all four cases, Petitioner raised Grounds II through IV of his habeas petition.  (*See* Pet'r's Br. on Appeal, ECF Nos. 32, 34, 36, 38.)  In Case Nos. 08-030603-FC and 08-030872-FH, Petitioner also raised Ground I of the habeas petition.  (*See*, ECF Nos. 32, 36.)[1]  In all four cases, the Michigan Court of Appeals denied leave to appeal for lack of merit in the grounds presented. (12/1/09 Mich. Ct. Appeals (MCOA) Ords., ECF Nos. 32, 34, 36, 38.)

Petitioner filed applications for leave to appeal to the Michigan Supreme Court in all four cases.  In Case Nos. 08-030603-FC, the supreme court remanded the case to the trial court for correction of the judgment of sentence to make the sentence for carrying a dangerous weapon with unlawful intent not run consecutively to the sentence for the felony firearm, as the former was not

---

[1]In Case No. 08-030603-FC, Petitioner raised two additional sentencing issues, which are not presented in his habeas petition.  In Case No. 08-030604-FH, Petitioner raised one sentencing issue that is not presented in this habeas petition.

a predicate felony offense to the felony-firearm conviction.  The supreme court also ordered that sentence credit should be applied to the sentence for carrying a dangerous weapon with unlawful intent.  The court denied leave to appeal in all other respects, because the questions did not warrant review by the court.  (4/27/10 Mich. Sup. Ct. (MSC) Ord., ECF No. 33.)  In the remaining three cases, the supreme court denied leave to appeal, because it was not persuaded that the questions should be reviewed by the court.  (4/27/10 MSC Ords., ECF Nos. 35, 37, 39.)

Thereafter, Petitioner filed a motion for relief from judgment in all four cases on June 14, 2010, and he filed supplemental motions on July 1, 2010.  In his motion, Petitioner raised the 19 claims set forth under Ground V of the petition.  In an opinion and order issued on November 22, 2010, the trial court held that Petitioner had failed to demonstrate good cause and actual prejudice for his failure to bring the claims on direct appeal.  The court expressly held that the ineffective assistance of appellate counsel could not serve as cause, as the remaining claims lacked merit or were waived by entry of the guilty plea.  The court also held that Petitioner had failed to demonstrate actual prejudice.  (11/22/10 Cir. Ct. Op. & Ord., 3-4, ECF No. 40.)

Petitioner sought leave to appeal to the Michigan Court of Appeals, raising the 13 issues presented in the motion for relief from judgment, which are the first 13 of the 19 issues stated in Ground V.  (Pet'r's Br. on Appeal of Ord. Den. Mot. for Relief, ECF No. 40.)  Petitioner did not raise the six issues presented in his supplement to the motion and brief in support.  (*Id.*)  In an order issued on September 20, 2011, the court denied leave to appeal for failure to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).  (11/22/10 Cir. Ct. Ord., ECF No. 40.)  Petitioner attempted to file an application for leave to appeal to the Michigan Supreme Court, but it was rejected as untimely.

In his habeas application, Petitioner raises the four claims he presented on direct appeal, together with all 19 issues presented to the trial court on collateral review.

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court

announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### Discussion

I.      Ground I:  Double Jeopardy

In his first ground for habeas relief, Petitioner asserts that his sentences in Case Nos. 08-030603-FC and 08-030872-FH for both being a felon in possession of a firearm and felony firearm violate the Double Jeopardy Clause.  The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  In addition to prohibiting multiple prosecutions after acquittal, *see Brown v. Ohio*, 432 U.S. 161 (1977),  the Double Jeopardy Clause protects against multiple punishments for the same offense.  *See North United States v. Dixon*, 509 U.S. 688, 696 (1993); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Costo v. United States*, 904 F.2d 344 (6th Cir. 1990).  The protection against multiple punishments for the same criminal act "is designed to insure that the sentencing discretion of courts is confined to the limits established by the legislature."  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  This guarantee serves principally as a restraint on courts and prosecutors, not on legislatures. *See Garrett v. United States*, 471 U.S. 773, 793 (1985) (no double-jeopardy violation when Congress intended to permit prosecution for continuing criminal enterprise after prior conviction for predicate offense); *Missouri v. Hunter*, 459 U.S. 359, 365-66 (1983).  Therefore, when determining whether punishments are "multiple" under this aspect of the Double Jeopardy Clause, the court is bound by the intent of the legislature.  *Johnson*, 467 U.S. at 499; *Hunter*, 459 U.S. at 366-68.

In this context, the United States Supreme Court has traditionally applied the "same-elements" test first enunciated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

*See Rutledge v. United States*, 517 U.S. 292, 297 (1996). The same-elements test, also known as the "*Blockburger* test," inquires whether each offense contains an element not contained in the other. If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304. If not, they are the "same offense" and double jeopardy bars additional punishment. *See Brown v. Ohio*, 432 U.S. 161, 168-69 (1977). If the *Blockburger* test is satisfied, however, it is presumed that the legislature intended to punish the defendant under both statutes and there is no double jeopardy bar to multiple punishments. *Whalen v. United States*, 445 U.S. 684, 691-92 (1980). Nevertheless, even where the *Blockburger* test indicates the existence of only one offense, where "a legislature specifically authorizes cumulative punishment under two statutes, . . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishments under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

In *White v. Howes*, 586 F.3d 1025 (6th Cir. 2009), the Sixth Circuit reversed the Eastern District of Michigan's grant of habeas corpus relief on the question facing this Court: whether punishments for both being a felon in possession and felony firearm, when based on the same conduct, violate the double-punishment prohibition of the Double Jeopardy Clause. *Id.* at 1035. As the *White* Court recognized, application of the *Blockburger* test readily reveals that convictions on both offenses for the same conduct results in double punishment, because a felon who possesses a firearm will always commit a felony and will always possess a firearm to do so. *Id.* at 1028. However, as the *White* court also held, the Michigan Supreme Court has held that the structure of the felony-firearm statute clearly indicates that the legislature intended to impose double

-13-

punishment. *Id.* at 1031-32 (citing *People v. Mitchell*, 575 N.W.2d 283, 285) (1998) (holding that the Michigan legislature, by separately listing a narrow set of four exceptions to offenses that may serve as a predicate offense to the felony-firearm offense, implicitly excluded all others, including felon in possession)). Although the Sixth Circuit recognized the existence of a number of dissenting opinions by Supreme Court justices over time, the court held that, under current jurisprudence, where a legislature has clearly indicated its intent to provide for double punishment, the Double Jeopardy Clause does not bar such a result. *White*, 586 F.3d at 1033-35.

As a consequence, the Michigan Court of Appeals' denial of Petitioner's first ground for habeas relief was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

II.      Ground II:  Lack of Factual Basis to Support Plea

In his second ground for habeas relief, Petitioner argues that his pleas to carrying a concealed weapon in Case Nos. 08-030603-FC and 08-030872-FH are invalid, because the plea colloquy contains an insufficient factual basis to support the pleas. The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. While states are free to adopt procedural rules requiring a factual basis as Michigan has done in MICH. CT. R. 6.610(E)(1)(a), the Federal Constitution does not mandate they do so. *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975); *accord Meyers v. Gillis*, 93 F.3d 1147, 1152 (3d Cir. 1996); *United States v. McGlocklin*, 8 F.3d 1037, 1047 (6th Cir. 1993) (en banc) (implicitly overruled on other grounds by *Custis v. United States*, 511 U.S. 485 (1994)).

-14-

Moreover, to the extent that Petitioner suggests that the plea was obtained in violation of state law, his claim is not cognizable in this proceeding. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES). The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Accordingly, Petitioner fails to demonstrate that the state court's rejection of his claim was either contrary to or an unreasonable application of clearly established Supreme Court precedent.

III.    Grounds III:  Involuntary Plea

Petitioner argues in his third habeas ground that his guilty plea was invalid because it was not knowing or voluntary. Specifically, he argues that he was not adequately advised that higher sentencing guidelines would apply because of his habitual offender status, resulting in an unintelligent plea.

A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice

-15-

among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56

(1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).   Courts assessing whether a

defendant's plea is valid look to "all of the relevant circumstances surrounding it," *Brady v. United*

*States*, 397 U.S. 742, 749 (1970), and may consider such factors as whether there is evidence of

factual guilt.   While courts may consider whether a factual basis for a guilty plea exists in their

assessments of its validity, it has generally been held that the Constitution does not require that they

ensure such a basis exists.   *See Alford*, 400 U.S. at 31 ("Strong evidence of guilt may suffice to

sustain a conviction on an *Alford* plea, and may be essential under FED. R. CRIM. P. 11, but it is not

necessary to comply with the Constitution."); *see also Matthew v. Johnson*, 201 F.3d 353, 365 (5th

Cir. 2000); *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983); *Thundershield v. Solem*, 565 F.2d

1018 (8th Cir. 1977);  *Edwards v. Garrison*, 529 F.2d 1374, 1376 (4th Cir. 1975);  *Roddy v. Black*,

516 F.2d 1380, 1385 (6th Cir. 1975);  *Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).   In

addition, the defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must

have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645

n.13 (1976);  *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).   The plea must be entered "voluntarily,"

i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing

the will of the defendant" or of state-induced emotions so intense that the defendant was rendered

unable to weigh rationally his options with the help of counsel.   *Brady*, 397 U.S. at 750;

*Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or

threats which deprive it of the character of a voluntary act, is void.").

      The defendant must also understand the consequences of his plea, including the nature

of the constitutional protection he is waiving.   *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at

755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made.

 *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Petitioner's argument is wholly unsupported by the record. At the plea hearing held on September 10, 2008, the parties described the plea agreement as follows:

> [PROSECUTOR]: The People would note for the record that the plea in this matter is one in which as it relates to File No. 08-030603-FC, the defendant would be tendering a plea of guilty to the alternative first count, that being one of assault with intent to do great bodily harm less than murder and the remaining counts in the information and acknowledging his habitual offender status.

> If this is done at the time of sentencing, the People would be moving to dismiss Count I which is an assault with intent to murder.

> As it relates to File No. 08-030604, containing three counts, that being one of domestic violence, felon in possession of a firearm, and felony firearm, it's the People's understanding that the defendant would be acknowledging those counts and being habitual offender fourth offense. The People would also note for the record that as it relates to this file that due to the fact that the defendant would be tendering a plea, the People will not be submitting this to the U.S. Attorney for an indictment which we have been told would be investigated and forthcoming as of today's date if this matter doesn't go today.

As it relates to File No. 08-030872-FH, it's the People's understanding that the defendant would be tendering a plea to the entirety of that file.

And as it relates to File No. 08-030914-FH, it's the People's understandding that the defendant would be tendering a plea of guilty to County I and II, and as with all the other files, acknowledging his habitual offender status.

Your Honor, for the purpose of this record I believe that yesterday the defense placed on the record the possibility of a sentencing range based on his calculations of the guidelines, and it's my understanding that [defense counsel] has again gone over this with his client and he understands those.

[DEFENSE COUNSEL]:  . . . That is a correct statement of the plea agreement.  We did go over the guidelines as far as what the impact would be on him, and just to clarify on the record, the reason that we're doing this, if he was found guilty of the assault with intent to murder, the guidelines, as I calculated them, would be 135 to 450 for a minimum sentence in months.  The guidelines again as I calculate them for the plea as given here would be 29 to 114 months as a minimum sentence.

(Plea Hr'g Tr., 3-5, ECF No. 25.)  Defense counsel inquired whether Petitioner understood the guidelines as outlined and whether Petitioner wanted to enter the plea agreement as the prosecutor had described it.  Petitioner answered affirmatively to both questions.  (*Id.*, 5.)  The attorneys further clarified their expectation that sentences for the felony-firearms charges would run consecutively to the correlating felony offenses, but concurrently with one another.  (*Id.*)  In addition, defense counsel clarified that, if Petitioner pleaded guilty as described, the federal agency had agreed not to pursue federal charges on facts related to these state charges.  (*Id.*, 5-6.)

Thereafter, the trial court asked Petitioner if he understood that the maximum penalty for GBH was ten years, but it became a possible maximum of life under a fourth-offense felony offender enhancement.  Petitioner stated that he understood.  Petitioner also declared that he understood that the maximum penalties for the other charges:  for misdemeanor domestic violence, 93 days; for felony firearm, two years to be served consecutively to the predicate offenses; for felon

-18-

in possession of a firearm, five years, but as a fourth-offense felony offender, life or any term of

years; for conspiracy to commit uttering and publishing, 14 years, but as a habitual offender, life or

any term of years; CCW, five years, but as a habitual offender, life or any term of years; and for

carrying a dangerous weapon with unlawful intent, five years, but as a habitual offender, life or any

term of years. (*Id.*, 7-8.) The court then advised Petitioner that by pleading guilty, he would give

up a series of rights: the right to a trial; the right to a trial by jury; the right to be presumed innocent;

the right to be proved guilty beyond a reasonable doubt; the right to have witnesses appear and

testify; the right to question those witnesses; the right to have witnesses summoned; the right to

remain silent, the right to not have his silence used against him; and the right to testify at trial.

Petitioner separately agreed that, with respect to each right, he both understood the right and

understood that he would give it up by pleading guilty. (*Id.*, 8-11.) Petitioner also acknowledged

that the court's acceptance of the plea would result in Petitioner giving up any claim that the plea

was the result of other promises than those placed on the record and any claim that the plea was not

of his free will. (*Id.*, 11.) The court then repeated the charges to which Petitioner was pleading

guilty in each case and which counts would be dismissed, and Petitioner acknowledged that he

understood. (*Id.*, 11-12.) Both the attorneys and Petitioner agreed that the court had recited the plea

agreement correctly, and Petitioner denied being made other promises or being threatened to induce

the plea. (*Id.*, 12-13.)

   The court then asked for a description of the events supporting the offenses in each

of the cases, and Petitioner responded affirmatively to a series of questions by defense counsel and

the court about all four cases. With respect to Case No. 08-030604, Petitioner acknowledged having

a fight with his girlfriend Lakesha Kelly on March 19, 2008, during which he hit or slapped her. He

also admitted that, when the police arrived, he was sleeping on top of a gun that he knew was there. (*Id.*, 13.)  In response to the court's question, Petitioner also acknowledged that at the time of those events, he had previously been convicted of a specified felony and his rights had not been restored. With respect to Case. No. 08-030914, the case involving uttering and publishing and the conspiracy to do so, Petitioner admitted in response to questions from his attorney and the court that, between October 12, 2007 and November 6, 2007, he entered into an agreement with Latonya Kelly, Dave Lauzon, and Germayne Buckner to take and cash some forged checks that he knew were forged, and he helped the others to do that.  (*Id.*, 14-15.)  In Case No. 08-030603-FC, Petitioner admitted that, on December 25, 2007, he had a confrontation with Ray Browning, and he shot him.  Petitioner also admitted that he was carrying a firearm and that he knew that he had been convicted in 2006 of a specified felony and that his rights had not been restored.  Petitioner stated that he did not intend to kill Browning, but he intended to injure him.  (*Id.*, 16.)  Petitioner also admitted that he used the firearm from inside a car, so it was concealed until he pulled it out.  Further, he admitted that he carried the gun because he intended to commit the shooting.  (*Id.*, 18-19.)  Finally, with respect to Case No. 08-0300872, Petitioner admitted that, on October 2, 2007, he had a confrontation with Saginaw Police Officer Frederick Mata, during which Petitioner ran away, that he possessed a gun that was not readily visible, and that he threw the gun while he was being chased.  He also admitted that he had previously been convicted of carrying a concealed weapon and had not had his rights restored.  (*Id.*, 17-18.)  Finally, Petitioner admitted having been convicted of the requisite prior felony offenses to support the fourth-offense habitual offender charge:  in 2003, escape and larceny over $1,000.00 but less than $20,000.00; in 2006, possession of a firearm; in 2005, attempted resisting and obstructing.  Based on all of Petitioner's responses, the Court concluded that the "plea

[was] understandingly made, voluntary and accurate . . . ." (*Id.*, 19.)  The court therefore accepted the plea.  (*Id.*)

As is obvious from this recitation, Petitioner was fully advised of the impact of his habitual-offender status on the possible sentence he received.  He also was advised that his sentence under the guidelines could have been greater than what he received.  Moreover, the sentences imposed on Petitioner fell within the guideline ranges that he acknowledged during his plea hearing.  On the most serious offense with which he was charged, the GBH, Petitioner was told that the guideline-minimum sentence would be 29 to 114 months, with a maximum of life.  Petitioner was sentenced to a prison term of 96 months to 20 years on that offense. (S. Tr., 7, ECF No.26.)  That sentence fell well within the guidelines range, despite the fact that it may have been longer than Petitioner would have liked.  In sum, Petitioner was fully advised of the impact of his habitual-offender status on the possible sentences he received, and he admitted that he understood that impact.  The state court therefore acted reasonably in concluding that Petitioner knowingly and voluntarily pleaded guilty.

IV.   Ground IV:  Ineffective Assistance of Trial Counsel

In Ground IV of his habeas application, Petitioner argues that his trial attorney was ineffective in failing to make appropriate objections to the alleged errors cited in Grounds I through III.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court

considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).  Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness.  *Id.*  In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process.  "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen*

*v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Petitioner utterly fails to meet the *Strickland* standard, much less to overcome the double deference owed to the state courts' rejections of his claim.  The Court previously has concluded that Petitioner's first three grounds for relief are meritless.  Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.  *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000).

### V.      Count V:  Claims Raised in Motion for Relief from Judgment

Petitioner raised a total of 19 arguments in his motion for relief from judgment,  the brief in support, and the supplement to the motion.  On appeal to the Michigan Court of Appeals, however, Petitioner raised only the first 13 of those issues.  Petitioner did not file a timely appeal to the Michigan Supreme Court.

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's

constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

The district court can and must raise the exhaustion issue *sua sponte*, when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39. "[A] state may not be considered to have waived the defense of nonexhaustion unless it does so expressly and through counsel." *Rockwell v. Yukins*, 217 F.3d 421, 423-24 (6th Cir. 2000).

Petitioner sought leave to appeal the circuit court's denial of his motion for relief from judgment to the Michigan Court of Appeals. Petitioner, however, did not timely file an application for leave to appeal to the Michigan Supreme Court, so his appeal was rejected as untimely. As a consequence, Petitioner did not "fairly present" the claims raised in his motion for relief from judgment to all levels of the Michigan courts. *O'Sullivan*, 526 U.S. at 842; *Duncan*, 513 U.S. at 365-66. His claims under Ground V therefore were not fully exhausted in the state courts.

Exhaustion is only a problem, however, if there is a state court remedy available for petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). If no further

state remedy is available to the petitioner, exhaustion does not present a problem, but the claim is procedurally defaulted. *Id.*

Under Michigan law effective August 1, 1995, a defendant may file only one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq*. *See* MICH. CT. R. 6.502(G)(1). Petitioner already has filed his one allotted motion. He therefore has no available remedy. As a result, the claims raised in Petitioner's motion for relief from judgment are not considered unexhausted, but they are deemed procedurally defaulted. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160.

If a petitioner has procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see McCleskey v. Zant*, 499

U.S. 467, 497 (1991).  A petitioner who fails to demonstrate cause and prejudice cannot have a cognizable claim.  *Gray*, 518 U.S. at 162.

Petitioner does not even argue cause for his default.  To the extent that he implies that his appellate attorney rendered ineffective assistance of counsel in failing to raise on direct appeal the issues raised on collateral review, he cannot demonstrate cause for multiple reasons.

First, to serve as cause to excuse the default, a claim of ineffective assistance of counsel must be properly exhausted.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Buell v. Mitchell*,  274 F.3d 337, 349 (6th Cir. 2001); *Coleman v. Mitchell*, 244 F.3d 533, 538 (6th Cir. 2001).  Petitioner did not present a claim of ineffective assistance of appellate counsel to all levels of the Michigan courts – indeed, he did not expressly present a claim of ineffective assistance of appellate counsel at any level of state-court review.  And he did not take any claim presented in his motion for relief from judgment all the way to the Michigan Supreme Court.  The claim of ineffective assistance of appellate counsel therefore is itself unexhausted and cannot serve to excuse Petitioner's default.

Second, even if Petitioner had properly exhausted his claim, the trial court expressly found that appellate counsel had not been shown "to have been ineffective in any regard." (11/22/10 Cir. Ct. Op. & Ord., 3, ECF No. 29.)  That conclusion is entirely reasonable.  As the trial court recognized, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  Here, the claims Petitioner presented on collateral review were far weaker than those presented by counsel on direct appeal.  Indeed, the claims raised in Petitioner's motion for relief from judgement

were either waived by his decision to plead guilty or unsupported by the factual record. Petitioner therefore utterly fails to overcome the presumption that counsel's performance fell within the range of reasonable professional assistance. *Id.* at 689.

Third, Petitioner does not even argue that any alleged failure of counsel would have caused him to reject the plea offer and proceed to trial. He therefore cannot demonstrate the prejudice prong of any ineffective assistance claim. *See Hill*, 474 U.S. at 59.

For all these reasons, Petitioner fails to demonstrate cause excusing his procedural default of the claims raised in his motion for relief from judgment. Where a petitioner fails to show cause, the court need not consider whether he has established prejudice. *See Engle v. Isaac*, 456 U.S. 107, 134 n.43 (1982); *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985). Moreover, Petitioner cannot show a fundamental miscarriage of justice that would permit him to avoid his procedural default, as he does not even argue that he was actually innocent of the offenses to which he pleaded guilty. *See House*, 547 U.S. at 536; *Murray*, 477 U.S. at 495.

As a consequence, all of the issues raised in Petitioner's motion for relief from judgment will be denied, as they are procedurally defaulted.

## Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails to present a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit

Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:    August 31, 2016                /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE